Donald S. Zakarin (dzakarin@pryorcashman.com)
Richard C. Schoenstein (rschoenstein@pryorcashman.com)
Anna E. Hutchinson (ahutchinson@pryorcashman.com)
PRYOR CASHMAN LLP
7 Times Square
New York, New York  10036-6569
(212) 421-4100
*Attorneys for Defendants China Shenghuo*
*Pharmaceutical Holdings, Inc., Lan's*
*International Medicine Investment Co., Ltd.,*
*Gui Hua Lan, and Qiong Hua Gao*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENO VARGHESE, Individually and on Behalf of All Others Similarly Situated,<br><br>                              *Plaintiffs*,<br><br>     v.<br><br>CHINA SHENGHUO PHARMACEUTICAL HOLDINGS, INC., et al.,<br><br>                              *Defendants*. | 08-cv-07422-VM |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THE CHINA SHENGHUO DEFENDANTS' MOTION
<u>TO DISMISS THE CONSOLIDATED COMPLAINT</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

    I.    THE COMPLAINT FAILS TO STATE ANY CLAIM
          TO THE EXTENT THAT IT RELIES UPON SUPPOSED
          MISSTATEMENTS REGARDING INTERNAL CONTROLS .................................... 1

    II    THE COMPLAINT FAILS TO ALLEGE SCIENTER .................................................. 4

          A.  The Alleged Control Issues Do Not Establish Scienter ............................... 5

          B.  The Alleged GAAP Violations Do Not Establish Scienter ......................... 6

          C.  The Removal of an Officer Does Not Establish Scienter ........................... 7

    III.   THE COMPLAINT FAILS TO ALLEGE LOSS CAUSATION ................................... 8

    IV.   THE COMPLAINT FAILS TO ALLEGE A SECTION 20(a) CLAIM .......................... 9

    V.    LEAVE TO REPLEAD SHOULD BE DENIED ............................................................ 10

CONCLUSION .................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                       **PAGE(s)**

*Acito v. IMCERA Group*,
    47 F.3d 47 (2d Cir. 1995)..................................................................................................3

*Atlas v. Accredited Home Lenders Holding Co.*,
    556 F. Supp. 2d 1142 (S.D. Cal. 2008)..............................................................................6

*In re Authentidate Holding Corp. Secs. Litig.*,
    No. 05 Civ. 5323 (LTS), 2009 WL 755360 (S.D.N.Y. March 23, 2009).........................10

*Batwin v. Occam Networks, Inc.*,
    No. CV 07-2750 CAS (SHx), 2008 U.S. Dist. LEXIS 52365
    (C.D. Cal. July 1, 2008) ......................................................................................................5

*In re DRDGOLD Ltd. Securities Litigation*,
    472 F. Supp. 2d 562 (S.D.N.Y. 2007)............................................................................4, 5

*In re FBR Inc. Securities Litigation*,
    544 F. Supp. 2d 346 (S.D.N.Y. 2008)................................................................................4

*Fouad v. Isilon System, Inc.*,
    No. C07-1764 MJP, 2008 WL 5412397 (W.D. Wash. Dec. 29, 2008) ..............................8

*In re Friedman's, Inc. Securities Litigation*,
    385 F. Supp. 2d 1345 (N.D. Ga. 2005) ..............................................................................6

*In re Gilat Satellite Networks, Ltd.*,
    No. CV-02-1510, 2005 U.S. Dist. LEXIS 41996 (E.D.N.Y. Sept. 19, 2005) .....................7

*Hall v. Children's Place Retail Stores, Inc.*,
    580 F. Supp. 2d 212 (S.D.N.Y. 2008)................................................................................8

*Harrison v. Rubenstein*,
    02 CIV. 9356, 2007 WL 582955 (S.D.N.Y. Feb. 26, 2007)...............................................3

*In re Intelligroup Securities Litigation*,
    527 F. Supp. 2d 262 (D.N.J. 2007) ....................................................................................7

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005)...............................................................................................9

*Leykin v. AT&T Corp.*,
    423 F. Supp. 2d 229 (S.D.N.Y. 2006), *aff'd*, 216 Fed. Appx. 141
    (2d Cir. 2007), *cert. denied*, 128 S. Ct. 883 (U.S. 2008) ..................................................9

**CASES**                                                                                                                         **PAGE(s)**

*In re Livent Securities Litigation*,
 148 F. Supp. 2d 331 (S.D.N.Y. 2001) .......................................................................... 4, 7

*In re McKesson HBOC, Inc. Securities Litigation*,
 126 F. Supp. 2d 1248 (N.D. Cal. 2000) ............................................................................ 8

*In re Merrill Lynch & Co. Research Reports Securities Litigation*,
 Nos. 02 MDL 1484, 02 CIV 9690, 2008 WL 2324111 (S.D.N.Y. June 4, 2008) ......... 9, 10

*In re MicroStrategy Inc. Securities Litigation*,
 115 F. Supp. 2d 620 (E.D. Va. 2000) ................................................................................ 6

*Middlesex Retirement System v. Quest Software, Inc.*,
 No. CV 06-6863, 2008 U.S. Dist. LEXIS 68419 (C.D. Cal. July 10, 2008) ...................... 8

*In re Oxford Health Plans, Inc. Securities Litigation*,
 51 F. Supp. 2d 290 (S.D.N.Y. 1999) .............................................................................. 5, 6

*PR Diamonds, Inc. v. Chandler*,
 364 F.3d 671 (6th Cir. 2004) ............................................................................................ 6

*In re Rent-Way Securities Litigation*,
 209 F. Supp. 2d 493 (W.D. Pa. 2002) ............................................................................... 6

*Roth v. Aon Corp.*,
 No. 04-C-6835, 2008 U.S. Dist. LEXIS 18471 (N.D. Ill. Mar. 7, 2008) .......................... 6

*Rothman v. Gregor*,
 220 F.3d 81 (2d Cir. 2000) ............................................................................................... 6

*Rubin v. MF Global, Ltd.*,
 No. 08 Civ. 2233 (VM), 2009 WL 2058590 (S.D.N.Y. July 16, 2009) ...................... 4, 10

*In re Scottish Re Group Securities Litigation*,
 524 F. Supp. 2d 370 (S.D.N.Y. 2007) ............................................................................... 6

*In re Seitel, Inc. Securities Litigation*,
 447 F. Supp. 2d 693 (S.D. Tex. 2006) .............................................................................. 6

*Stocke v. Shuffle Master, Inc.*,
 615 F. Supp. 2d 1180 (D. Nev. 2009) ............................................................................... 5

*Tabor v. Bodisen Biotech, Inc.*,
 579 F. Supp. 2d 438 (S.D.N.Y. 2008) ............................................................................ 10

| **CASES** | **PAGE(s)** |
|---|---|

*In re Take-Two Interactive Securities Litigation*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008)..................................................................................7

*In re UTStarcom, Inc. Securities Litigation*,
    617 F. Supp. 2d 964 (N.D. Cal. 2009) ..............................................................................8

*In re Veeco Instruments, Inc., Securities Litigation*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ..................................................................................5, 7

*In re Warnaco Group, Inc. Opinion Securities Litigation (II)*,
    388 F. Supp. 2d 307 (S.D.N.Y. 2005).................................................................................9

In August 2008 China Shenghuo Pharmaceutical Holdings, Inc. ("CSP" or "Company") announced that its financial statements should not be relied upon. After an investigation, the Company restated its financials for year-end 2007 and 1Q 2008, but not for 2Q or 3Q 2007. The Lead Plaintiffs, who purchased most of their CSP shares well before the year-end 2007 financials were even filed, brought this action on the heels of the August 2008 announcement, anticipating that all of the Company's financial statements would be restated. Now realizing that they can not pursue claims based on restated financial statements issued *after* they purchased their stock, Plaintiffs have recharacterized their claims as being addressed to the supposed falsity of the Company's statements regarding its efforts to improve its inadequate internal controls.

Plaintiffs' newly altered fraud theory remains insufficient. First, the disclosures concerning the inadequacy of CSP's controls were so clear and repeated so often, that no investor could have been misled. (Point I, *infra*.) Plaintiffs also cannot sustain their scienter allegations as they rely on cases arising in starkly dissimilar circumstances and allegations sounding in negligence rather than fraud. (Point II, *infra*.) Nor can Plaintiffs salvage the Complaint's inadequate attempt to allege loss causation, as they cannot attribute the decline in the value of CSP stock to (much less apportion among) the realization of disclosed risks, allegedly undisclosed risks and market-wide trends. (Point III, *infra*.) Without a 10(b)-5 claim, there is no basis for a Section 20(b) claim. (Point IV, *infra*.) Finally, Plaintiffs' claims are so demonstrably baseless that repleading would be futile. Accordingly, the Complaint should be dismissed with prejudice. (Point V, *infra*)

I. **THE COMPLAINT FAILS TO STATE ANY CLAIM TO THE EXTENT THAT IT RELIES UPON SUPPOSED MISSTATEMENTS REGARDING INTERNAL CONTROLS**

Because Lead Plaintiffs purchased most of their CSP shares months before the Company issued the financial statements that were later restated, they cannot plead transaction causation (CSP Def. Mem. 21-22). In an effort to overcome their lack of standing, Plaintiffs have

recharacterized their claims as being based on alleged misstatements regarding CSP's efforts to improve internal controls. Plaintiff concede, however, that:

> in *every* report filed with the SEC, including the 2007 Form 10-KSB that HB&M certified, CSP clearly stated that its internal controls were deficient. [Complaint] ¶¶31, 35, 84. If knowledge of internal control deficiencies is not a red flag, it is hard to imagine what is.

(Pl. Mem. 25 (emphasis in original).)[1] Plaintiffs cannot simultaneously attack the accountants for supposedly ignoring these disclosed red flags while trying to sidestep these warnings in trying to fashion a fraud claim against CSP. Their attempted solution, manufacturing a fraud claim from CSP's statements that it was trying to address its inadequate internal controls (Pl. Mem. 11-13), is untenable.[2]

CSP clearly disclosed that its efforts to address its existing inadequate controls were ongoing and a work in progress. The Company's first 10-QSB during the class period stated, *inter alia*, that "[w]e are in the process of improving our controls. . . [and] believe that the remedial steps **that we take will** address the conditions identified by our CEO as significant deficiencies . . . . **Additional effort is needed to fully remedy these deficiencies** . . . ." (Reiser Decl. Ex. C at 17 (emphasis added).)

The same disclosure language was set forth in the Company's next 10-QSB. (Reiser Decl. Ex. D. at 40.) In the Form 10-KSB issued for the fiscal year ended December 31, 2007,

---

[1]    Plaintiffs' reference to a "red flag" is directed to the accountants who allegedly should have done something different given CSP's fully disclosed lack of familiarity with U.S. GAAP and the consequent inadequacy of its internal controls. In reality, the disclosure was a clear and repeated warning to investors that they should not rely on the integrity of CSP's financial statements precisely because of these disclosed problems.

[2]    As is discussed in Point III below, Plaintiffs' losses were not caused by the alleged falsity of CSP's stated intent to improve its existing and fully disclosed inadequate controls. On the contrary, to the extent not caused by market forces, the losses resulted from the realization of a fully disclosed risk factor.

2

the Company set forth additional efforts by then in place, including separate records to record U.S. GAAP audit adjustments, engagement of outside professionals, and creation of an internal audit function. (Reiser Affr. Ex. E. at 39.) Two months later, these steps were reiterated in the Form 10-Q for the first quarter of 2008, which added that "we have **commenced** necessary training and **engaged external professional accounting and consultancy firms** to assist us in the preparation of the U.S. GAAP accounts . . . ." (Reiser Decl. Ex. F. at 23 (emphasis added).)

Plaintiffs do not dispute the accuracy of any of these statements, but argue (bereft of any facts) that the changes should have been made more rapidly and that the changes made after the restatement were the same as those promised earlier. (Pl. Mem. 7-8.) Plaintiffs omit that the later remedial efforts also included dismissing the supervisors responsible for the errant journal entries, providing additional training, accelerating the process of improving controls and replacing the Company's CFO. (Reiser Decl. Ex. G at 23.)

Plaintiffs' attempt to salvage a non-existent fraud claim has put them in the position of trying to shoehorn a garden variety mismanagement claim, objecting to the speed with which CSP was addressing its deficient internal controls, into a fraud claim.[3] The law bars such claims. *See, e.g., Acito v. IMCERA Group,* 47 F.3d 47, 53 (2d Cir. 1995); *Harrison v. Rubenstein*, 02 CIV. 9356, 2007 WL 582955, at *13 (S.D.N.Y. Feb. 26, 2007) ("'Allegations of

---

[3]     Unable to point to any actual false statements, Plaintiffs return again to the resignation letter of Mr. Bennett. (Pl. Mem. 7.) But that letter disavowed any belief that the Company engaged in fraud and did not dispute the public filings concerning internal controls. In addition, the letter is dated October 23, 2008, more than two months after the end of the purported class period. In fact, the items in that letter – such as Mr. Bennett's requests for committee meetings and information (Pl. Mem. 7) – do not even relate to any of the "fraud" actually alleged in the Complaint. Mr. Bennett's view that "[unspecified individuals] are seemingly unwilling to be educated on what is necessary to be a good member of Amex or any other credible market" (*id.*), at most, raise issues of mismanagement, not securities law fraud.

3

mismanagement do not state a claim for securities fraud.'") (quoting *O & G Carriers, Inc. v. Smith*, 799 F.Supp. 1528, 1540 (S.D.N.Y.1992)).[4]

## II.     THE COMPLAINT FAILS TO ALLEGE SCIENTER

Plaintiffs have the burden of alleging that the China Shenghuo Defendants acted with a "strong inference" of fraudulent intent by alleging "motive and opportunity" or "strong circumstantial evidence of conscious misbehavior or recklessness." *In re Livent Sec. Litig.*, 148 F. Supp. 2d 331, 357 (S.D.N.Y. 2001) (Marrero, J) (quotations and citations omitted). Because there were no insider stock sales or any other indicia of fraud here, Plaintiffs ignore "motive and opportunity" and instead focus on recklessness. But the Complaint is nonetheless inadequate. As the Audit Committee concluded in its internal investigation:

> the [errant] journal entries were made at the direction of two supervisors in the Company's financial department, in an incorrect attempt . . . to follow the Company's policy that regional managers and sales representatives should be responsible for the collection of trade receivables, as well as to simplify the financial department's process of generating related data . . . . [T]he Audit Committee determined that the errors were not intended to affect the Company's financial statements and reported results.

(Schoenstein Aff. Ex. 11.) The Complaint "fail[s] to create a strong inference that the misreported data was issued in conscious or reckless furtherance of any alleged fraudulent scheme." *In re DRDGOLD Ltd. Sec. Litig.*, 472 F. Supp. 2d 562, 573-74 (S.D.N.Y. 2007) (Marrero, J.) (dismissing where it was "not at all implausible that the accounting errors . . . were

---

[4]     Even if a claim for mismanagement was available here, the disclosures would be determinative. *See, e.g., Rubin v. MF Global, Ltd.*, No. 08 Civ. 2233 (VM), 2009 WL 2058590, at *10 (S.D.N.Y. July 16, 2009) (dismissing complaint where potential for risk management system to fail was disclosed and "Plaintiffs [were] essentially complaining that Defendants failed to disclose that there was a higher or more specific risk…"); *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 359 (S.D.N.Y. 2008) (dismissing securities fraud claim where "[i]nvestors were cautioned that [the company] could not provide assurance that [its] risk management program or [] internal controls will prevent or reduce the risks to which we are exposed") (citation omitted).

of the type likely to result from the simple negligence of inexperienced accounting personnel, rather than from fraud" and alleged "shortcomings in DRD's internal controls" did not rise to the level of recklessness).[5]  As is detailed below, Plaintiffs further arguments lack merit.

### A.     The Alleged Control Issues Do Not Establish Scienter

Plaintiffs' citations to cases purporting to find scienter based on inadequate internal controls (Pl. Mem. 11, 13) are utterly inapposite – they involve reductions in internal controls, a "complete lack" of internal controls or situations where faulty revenue recognition was discovered, but not remediated.[6]  They do not involve the realization of a fully disclosed risk. Here, CSP historically operated under Chinese GAAP, went public in the U.S., and specifically disclosed as a risk factor in its prospectus that its familiarity with U.S. GAAP and its internal controls were inadequate.  CSP continued its efforts to improve internal controls and noted the steps taken in each periodic public filing.  There is nothing remotely similar in the cases cited by Plaintiffs.  *See, e.g., DRDGOLDd Ltd.*, 472 F. Supp. 2d at 574 ("while a 'complete lack of

---

[5]     Similarly, while Plaintiffs complain that CSP noted "improved control over the collection of account receivables and other receivables which resulted from our adoption of more stringent credit policy" (Pl. Mem. 5 (quoting Reiser Decl. Ex. D at 16)), no facts are alleged to show that this statement was false when made.

[6]     *In re Veeco Instruments, Inc., Sec. Litig.*, 235 F.R.D. 220, 232 (S.D.N.Y. 2006) (finding "strong circumstantial evidence of recklessness" in a "reduction by 75% of the internal accounting staff of its newly acquired division"); *In re Oxford Health Plans, Inc. Sec. Litig.*, 51 F. Supp. 2d 290, 294 (S.D.N.Y. 1999) (allegations that "KPMG recklessly disregarded, or outright ignored, blatant evidence of Oxford's extreme accounting irregularities, particularly Oxford's complete lack of internal controls"); *Stocke v. Shuffle Master, Inc.*, 615 F. Supp. 2d 1180, 1190-91 (D. Nev. 2009) (company disclosed improper revenue recognition in its 2005 10-K, stated that it "would implement a 'Remediation Plan' that would be a 'priority' in 2006," and then, allegedly, did not do so); *Batwin v. Occam Networks, Inc.*, No. CV 07-2750 CAS (SHx) 2008 U.S. Dist. LEXIS 52365, at ** 40-41 (C.D. Cal. July 1, 2008) (premature revenue recognition "had been brought to the attention of the Occam defendants, [but] they failed to correct these deficiencies until several years later").

5

internal controls' can constitute evidence of recklessness . . . the deficiencies alleged [here] do not rise to that level") (quoting *Oxford Plans*, 51 F. Supp. 2d at 294).

### B.     The Alleged GAAP Violations Do Not Establish Scienter

Allegations of a violation of GAAP are not sufficient to state a securities fraud claim. (CSP Def. Mem. 18.)  Plaintiffs assert that the type and size of GAAP violations at issue here support an inference of scienter (Pl. Mem. 14-16), but the cited cases conclude the opposite, *see PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 684-86 (6th Cir. 2004) (alleged accounting irregularities "do not support a strong inference that nondisclosure of the correct numbers was the product of a deliberate or reckless effort by the Individual Defendants to defraud investors" where they were not "'in your face facts' that 'cry out' scienter"), or rely on much more substantial accounting issues.[7]  Moreover, the cases Plaintiffs cite to suggest that premature revenue recognition is the "type" of GAAP violation that creates an inference of scienter (Pl. Mem. 15) turn on the specific knowledge of defendants alleged in connection with those

---

[7]     *See In re MicroStrategy Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 636-39 (E.D. Va. 2000) (falsely reporting a profit for three straight years and overstating revenues by $66 million during that time period); *In re Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d 370, 394 (S.D.N.Y. 2007) ("$112 million 'surprise' valuation that allegedly wiped out a year's worth of the Company's earnings"); *In re Seitel, Inc. Sec. Litig.*, 447 F. Supp. 2d 693, 705 (S.D. Tex. 2006) (restated financial results for two years included revenue reductions of $68.2 million and changed the overall results from net income to net losses); *In re Friedman's, Inc. Sec. Litig.*, 385 F. Supp. 2d 1345, 1353 (N.D. Ga. 2005) (five categories of GAAP violations and overstated earnings from 2000 through 2003); *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) ($73.8 million in royalty advances wrongly written off); *In re Rent-Way Sec. Litig.*, 209 F. Supp. 2d 493, 507 (W.D. Pa. 2002) (restated financials increased net loss for 1998 from $1.8 to $5.8 million and changed net income of $14.6 million in 1999 to a net loss of $765,000); *Roth v. Aon Corp.*, No. 04-C-6835, 2008 U.S. Dist. LEXIS 18471, at *22 (N.D. Ill. Mar. 7, 2008) ($169 million overstatement of income in 2003 and a $76 million overstatement in 2004); *Atlas v. Accredited Home Lenders Holding Co.*, 556 F. Supp. 2d 1142, 1152 (S.D. Cal. 2008) (overstated pre-tax income in excess of $630 million and failure to write-down more than $140 million).

violations.[8]  Here, there is nothing to suggest that named defendants knew about the accounting irregularities – and the Audit Committee concluded that they did not know.

The biggest impact of the restatement here is that it reduced net income in 2007 from approximately $4 million to $1.7 million.  (Reiser Decl. Ex. G.)  It did not turn a profitable company into a non-profitable company and, in short, was not substantial enough to support a presumption of fraud.[9]  *See, e.g.*, *Livent, Inc.*, 148 F. Supp. 2d at 372 (finding the magnitude of the alleged fraud, alone, insufficient to support an inference of scienter).[10]

### C.    The Removal of an Officer Does Not Establish Scienter

Plaintiffs argue that CSP's replacement of its CFO with an individual more qualified in U.S. GAAP is indicative of scienter at the same time that they argue that their fraud claim is based on CSP's lagging efforts to cure the deficiencies of its internal controls.  The inherent contradiction in their position seems to have eluded Plaintiffs.  Not surprisingly, the cases cited by Plaintiffs (Pl. Mem. 17-18) demonstrate that their arguments are misplaced.  Each case

---

[8]    *See In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510, 2005 U.S. Dist. LEXIS 41996, at *64 (E.D.N.Y. Sept. 19, 2005) (specific allegations that Gilat's CFO and CEO were "well-situated to be aware of Gilat's faulty accounting…"); *Veeco Instruments*, 235 F.R.D. at 231 (allegations that former employees were ordered by named defendants to "push [adjustments to revenue recognition] into the fourth quarter and 'bury' them with other adjustments.")

[9]    Moreover, as some 75% of the Company's shares are owned by insiders (CSP Def. Mem. 3), the true impact of the restatement on potential class members is about $500,000.

[10]   To dispense with the argument that the SOX certifications signed by the individual Defendants somehow demonstrate scienter, one need only read the main cases cited by Plaintiffs (Pl. Mem. at 16), both of which dismissed, at least in part, complaints alleging securities fraud. *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 304-05 (S.D.N.Y. 2008) (allegations of a Sarbanes-Oxley certification not probative of scienter where the complaint "fail[ed] to allege that [defendant] possessed, or had access to, any specific, contemporaneous information that contradicted the company's public statements regarding its option grants" and dismissing portions of the complaint); *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 289-90 (D.N.J. 2007) ("allegations based on defendants' erroneous SOX certification cannot establish the requisite strong inference of scienter unless the complaint asserts facts indicating that, at the time of the certification, defendants knew or consciously avoided any meaningful exposure to the information that was rendering their SOX certification erroneous.")

7

entailed egregious circumstances **and** only considered changes in company management along with other strong scienter allegations. *See Hall v. Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 223 (S.D.N.Y. 2008) (CEO pledged his own stock as collateral for a loan, in violation of a company black-out period, and thus had a direct financial interest to conceal problems at the company).[11]  Here, there were no insider transactions and there are no allegations of any profit by anyone at the Company.  CSP's replacement of its CFO is not scienter.  It is a remedial effort to improve its deficient internal controls.

### III.    THE COMPLAINT FAILS TO ALLEGE LOSS CAUSATION[12]

Plaintiffs assert that there was a 19% decline in the share price of CSP on the day the possibility of a restatement was announced, and that there were only "slight declines" in the price during the class period that are not relevant in determining loss causation.  (Pl. Mem. 29-30.)  Again, however, Plaintiffs contradict themselves.  In another section of their brief, Plaintiffs count differently, complaining that Plaintiff Bennett purchased his 26,064 shares of CSP stock

---

[11]  *See also Middlesex Ret. Sys. v. Quest Software, Inc.*, No. CV 06-6863, 2008 U.S. Dist. LEXIS 68419, at *24-25 (C.D. Cal. July 10, 2008) (defendant's resignation was probative where that defendant received a "substantial number" of the backdated stock options at issue, "was in charge of drawing up the allegedly misleading financials," and refused to cooperate with a special committee investigation); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1273-74 (N.D. Cal. 2000) (finding sufficient allegations of scienter where, among other things, the company issued public statements that the terminated executives "knew or should have known" about the accounting improprieties at issue); *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 976 (N.D. Cal. 2009) (considering proximate departures of three officer and director defendants in analysis of scienter allegations, along with other factors including financial restatements totaling $400 million and "large-scale transactions" by the same defendants in company securities); *Fouad v. Isilon Sys., Inc.*, No. C07-1764 MJP, 2008 WL 5412397, at *11 (W.D. Wash. Dec. 29, 2008) ("Standing alone, [the departures of the CEO and CFO] would not support scienter.  But because the changes in management occurred while Isilon was preparing its own internal investigation of revenue recognition practices, the departures 'add one more piece to the scienter puzzle.'") (citations omitted).

[12]  For the reasons previously discussed, the Complaint also fails to adequately plead transaction causation.  (CSP Def. Mem. 22-23.)

8

during the class period, at an average of $9.64 per share, and has since suffered a 92% loss. (Pl. Mem. 6.) As Plaintiffs themselves assert, by the day before the accounting issues were announced, the price of CSP shares had already dropped to $2.33. (Pl. Mem. 30.) Thus, *Mr. Bennett had suffered a loss of 75% before the announcement*. Such a drop was consistent with dramatic market trends in 2008 and precludes any allegations of loss causation here. *See, e.g.*, *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, Nos. 02 MDL 1484, 02 CIV 9690, 2008 WL 2324111, at *8 (S.D.N.Y. June 4, 2008) (dismissing complaint where "there are no allegations to show that the steep decline [in stock value] was caused by the alleged fraud, rather than by the collapse of the market for Internet-based securities."); *Leykin v. AT&T Corp.*, 423 F. Supp. 2d 229, 246 (S.D.N.Y. 2006), *aff'd*, 216 Fed. Appx. 141 (2d Cir. 2007), *cert. denied*, 128 S. Ct. 883 (U.S. 2008) (same).

Plaintiffs' newfound focus on the alleged failure to promptly remediate internal control inadequacies fares no better under a loss causation analysis. In light of the substantial disclosures concerning inadequate control problems at CSP, Plaintiffs do not and cannot allege "facts sufficient to apportion the losses between the disclosed and concealed portions of the risk . . . ." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005) (affirming dismissal of 10(b)-5 claims where "substantial indicia of the risk that materialized [were] unambiguously apparent on the face of the disclosures…"); *accord In re Warnaco Group, Inc. Opinion Sec. Litig. (II)*, 388 F. Supp. 2d 307, 318 (S.D.N.Y. 2005) (dismissing complaint which contained "no allegations relating to the apportionment of plaintiffs' losses between the disclosed and concealed portions of the risk that materialized.")

IV.   **THE COMPLAINT FAILS TO ALLEGE A SECTION 20(a) CLAIM**

Plaintiffs assert that they have set forth a claim under Section 20(a) of the Exchange Act (Pl. Mem. At 31-33), but do not dispute that the absence of a primary violation of the Exchange

9

Act is fatal.  *See, e.g.*, *In re Authentidate Holding Corp. Secs. Litig.*, No. 05 Civ. 5323 (LTS), 2009 WL 755360, at *5 (S.D.N.Y. March 23, 2009) (dismissing Section 10(b) and 20(a) claims); *Tabor v. Bodisen Biotech, Inc.*, 579 F. Supp. 2d 438, 453 (S.D.N.Y. 2008) (same).  Thus, if the Section 10(b) claims are dismissed, the Section 20(a) claims here must also fall.

## V.     LEAVE TO REPLEAD SHOULD BE DENIED

Finally, Plaintiffs assert without support that, if nothing else, they should be permitted to replead their Complaint (already amended from the original).  (Pl. Mem. 33.)  This request should be denied where no hint is given as to how plaintiffs intend to rectify the many deficiencies contained in the current pleading.  *See, e.g.*, *Rubin*, 2009 WL 2058590, at *13 (requiring plaintiffs to demonstrate "that such a repleading would not be futile); *Merrill Lynch & Co.*, 2008 WL 2324111, at *8-9 (dismissing with prejudice where amendments could not overcome failure to plead loss causation).

## CONCLUSION

For the reasons set forth herein, and as set forth in the opening Memorandum of Law, the China Shenghuo Defendants respectfully submit that the Complaint should be dismissed against them, in all respects and with prejudice.

Dated:  August 31, 2009

       Respectfully submitted,

       **PRYOR CASHMAN LLP**


       By: _____/s/_____
         Donald S. Zakarin (dzakarin@pryorcashman.com)
         Richard C. Schoenstein (rschoenstein@pryorcashman.com)
         Anna E. Hutchinson (ahutchinson@pryorcashman.com)
       7 Times Square
       New York, New York  10036-6569
       Phone: (212) 421-4100
       Fax:  (212) 326-0806

       *Attorneys for the China Shenghuo Defendants*