UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
BENO VARGHESE et al.,                  :
                                       :      08 Civ. 7422(VM)
                     Plaintiffs,       :
                                       :      **DECISION AND ORDER**
       -  against  -                   :
                                       :
CHINA SHENGHUO PHARMACEUTICAL          :
HOLDINGS, INC. et al.,                 :
                                       :
                     Defendants.       :
----------------------------------X
**VICTOR MARRERO, United States District Judge.**

     Lead plaintiff William R. Bennett ("W. Bennett") and
Named  Plaintiff  Chia-Yiu  Maa  ("Maa")  (collectively
"Plaintiffs") filed a consolidated amended complaint in this
putative class action dated February 9, 2009 (the "Amended
Complaint"),  naming  as  defendants  China  Shenghuo
Pharmaceutical Holdings, Inc. ("CSP"); Lan's International
Medicine  Investment  Co.,  Limited  ("LIMI");  as  well  as
individual defendants Gui Hua Lan ("Gui") and Qiong Hua Gao
("Qiong") (collectively "CSP Defendants").  Plaintiffs also
name CSP's independent auditor, Hansen, Barnett & Maxwell,
P.C. ("HB&M").  Plaintiffs assert claims under § 10(b) of the
Securities Exchange Act of 1934 (the "Exchange Act"), 15
U.S.C.  §  78j(b)  ("§  10(b)");  Rule  10b-5  promulgated
thereunder, 17 C.F.R. § 240.10b-5 ("Rule 10b-5"); and § 20(a)
of  the  Exchange  Act,  15  U.S.C.  §  78t(a)  ("§  20(a)").
Plaintiffs bring these claims on behalf of themselves and all
other persons or entities who purchased CSP securities (the

"Class") during the period August 16, 2007 through April 20, 2008 (the "Class Period"). CSP Defendants and HB&M both move to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim upon which relief can be granted. For the reasons stated below, CSP Defendants' motion is DENIED, and HB&M's motion to dismiss is DENIED.

## I. <u>BACKGROUND</u>[1]

A.   <u>PARTIES</u>

Defendant CSP, a Delaware corporation with headquarters in China, is engaged in the research, development, manufacture, and marketing of pharmaceuticals, nutritional supplements, and cosmetic products. Defendant LIMI controlled 77% of CSP's stock during the Class Period. Defendant Gui has served as CSP's chief executive officer and chairman of the board since 1995. Gui is also president and chairman of LIMI, and as of April 2008, owned more than 62% of LIMI's outstanding shares. Defendant Qiong served as CSP's chief financial officer from January 2005 until she was removed in November 2008.

---

[1]  The facts below are taken from the Amended Complaint, which the Court accepts as true for the purpose of ruling on a motion to dismiss. <u>See</u> <u>Spool v. World Child Int'l Adoption Agency</u>, 520 F.3d 178, 180 (2d Cir. 2008) (<u>citing</u> <u>GICC Capital Corp. v. Technology Fin. Group, Inc.</u>, 67 F.3d 463, 465 (2d Cir. 1995)). Except where specifically quoted, no further reference to this document will be made.

Defendant HB&M is a regional public accounting firm that served as CSP's outside auditor during the Class Period.

Bennett purchased more than 26,000 shares of CSP common stock on October 25, 2007.  Maa purchased a total of 40,000 shares of CSP common stock during the Class Period.  Maa made his first purchase on November 29, 2007 and his last purchase on July 2, 2008.

B.   <u>FACTUAL ALLEGATIONS</u>

The Class Period begins on August 16, 2007, about two months after CSP began trading on the American Stock Exchange ("AMEX"), and when CSP filed its second quarter Form 10-QSB with the SEC ("2nd Quarter 2007 Form 10-QSB").  The Class Period includes CSP's third quarter filing with the SEC ("3rd Quarter 2007 Form 10-QSB"), the 2007 fourth quarter and full year filings ("Fiscal Year and 4th Quarter 2007 Form 10-KSB"), as well as the 2008 first quarter filing ("1st Quarter 2008 Form 10-Q").  The Class Period concludes August 20, 2008, when CSP announced that its financial statements throughout the Class Period could no longer be relied upon and would have to be restated.

The 2nd Quarter 2007 Form 10-QSB, filed August 16, 2007, included a disclosure that CSP's internal controls "had significant deficiencies that caused [CSP's] controls and procedures to be ineffective." (Amended Complaint ¶ 31.) CSP

-3-

reassured investors that it was in the process of "remediat[ing] these deficiencies through improving supervision, education, and training of CSP's accounting staff," and that the "remedial steps that [CSP takes] will address the conditions identified by [Gui] as significant deficiencies in [its] disclosure controls and procedures." (Id.)   The 2nd Quarter 2007 Form 10-QSB included Sarbanes-Oxley Act ("SOX") certifications signed by Qiong and Gui, who attested that the filing did not contain "any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading" and that the financial statements "fairly present in all material respects the financial condition, results of operations and cash flows" of CSP.   (Id. ¶ 30.)

CSP made nearly identical disclosures on the 3rd Quarter 2007 Form-QSB, filed November 15, 2007, and certified by Qiong and Gui.

On March 31, 2008, CSP filed its Fiscal Year and 4th Quarter 2007 Form 10-KSB, which reported CSP's 2007 net income as $4,016,640, earnings per share as $0.21, and general and administrative expenses as $4,935,754.   HB&M represented in the Fiscal Year and 4th Quarter Form 10-KSB that CSP's financial results were presented in compliance with Generally

-4-

Accepted Accounting Principles ("GAAP") and that HB&M's audits were conducted in accordance with Generally Accepted Auditing Standards ("GAAS").  Like the previous filings, the Fiscal Year and 4th Quarter 2007 Form 10-KSB included SOX certifications signed by Gui and Qiong.

On April 1, 2008, CSP issued a press release regarding the 2007 financial results (the "April 2008 Press Release"). The April 2008 Press Release stated that CSP had "implemented internal controls to comply with [SOX]" and that "beginning late in 2007, [CSP] implemented an internal control system, which will help ... to enhance [its] operating efficiency and reduce business risks."  (Id. ¶ 41.)

CSP filed its 1st Quarter 2008 Form 10-Q on May 20, 2008. In the 1st Quarter 2008 Form 10-Q, CSP claimed that its financial statements were prepared in accordance with GAAP. CSP also reported that it was in the process of addressing internal control weaknesses "by improving supervision, education, and training of [its] accounting staff."  (Id. ¶ 48.)  CSP repeated that the "remedial steps that [CSP] take[s] will address the conditions identified by [Gui] as significant deficiencies in [its] disclosure controls and procedures." (Id. ¶ 46.)

On August 20, 2008, CSP announced that its financial statements throughout the Class Period could no longer be

relied upon and would have to be restated.  At that time, CSP anticipated that it would have to restate its financial statements for its fiscal periods ending June 30, 2007, September 30, 2007, December 30, 2007, and March 31, 2008.  On the day of the announcement, CSP's stock fell from $2.33 per share to $1.89 per share.  Shortly thereafter, AMEX halted CSP's trading privileges.

On September 12, 2008, CSP filed a Form 8-K/A confirming that investors should not rely on CSP's statements issued throughout the Class Period.  In addition, the Form 8-K/A disclosed that the accounting errors that made the statements unreliable concerned uncollected trade receivables that were incorrectly recorded as cash transactions in contravention of GAAP.  CSP revealed that the errors resulted in an understatement of general administrative expenses and the overstatement of net income and earnings per share.

On October 23, 2008, CSP filed a Form 8-K with the SEC disclosing that Gene Michael Bennett, an independent member of CSP's Board of Directors and Audit Committee ("G. Bennett"), was resigning from the Company because of "poor corporate governance at CSP."  (Id. ¶ 52.)  G. Bennett's resignation email to the Board of Directors stated, in part:

> I have found the situation at this firm to be very much lacking in Good Corporate Governance and some examples are as follows:

I have repeatedly requested Audit Committee meetings and the Chair will not respond.

I have repeatedly asked to see the financials and back up and have been told to look at EDGAR reports –– this is ludicrous.

I have asked for other information such as the Internal Audit, the team and the situation and to no avail.

I have requested to meet with the Auditors when they were to be in Kunming and have been told by [CSP] that [this] ... was not necessary.

I had believed with the investigation that there would be a realization of the need for attention being given to corporate governance and with the new CFO there would be change.  INSTEAD I get included on several conference calls.  These calls were a sham –– I am expected to give an opinion of what is happening, the investigation and etc[.], but I have received no information as I have requested.  No power points, no details of what has happened and I could go on and on.

The purpose of setting the resignation date two months in advance is to allow the firm time to change its corporate governance stance and transparency issues.  As I need to include with the resignation statement filed with [AMEX], SEC, and other interested parties the situation at the date of resignation.

To be clear I do not feel the firm is fraudulent in its actions, nor purposely breaking rules and regulations, but they are uneducated and seemingly unwilling to be educated on what is necessary to be a good member of [AMEX] or any other credible market.

(Id. 52.)

On November 14, 2008, CSP filed a Form 8-K/A ("Second Form 8-K/A") announcing the conclusion of its investigation of the misstated financials.  In the Second Form 8-K/A, CSP admitted that its previously disclosed financial results were false and presented in violation of GAAP.  The Second Form 8-K/A described CSP's steps to address the accounting problems, including a demotion of Qiong and disciplinary measures for

several of the other individuals involved.  At this time, CSP announced that it was restating its financials for the fiscal year ending December 31, 2007 and the fiscal quarter ending March 31, 2008.  On November 20, 2008, CSP issued a press release announcing that it was "implementing significant remedial measures and other actions to address our weaknesses in internal control," including appointing a new CFO.  (Id. ¶ 56.)  On December 9, 2009, CSP announced that its common stock would resume trading on the NYSE Alternext LLC exchange.

C.   PROCEDURAL HISTORY

Beno Varghese originally filed this purported class action on August 21, 2008.  By Order dated December 10, 2008, the Court appointed W. Bennett as lead plaintiff.  W. Bennett filed the Amended Complaint on February 9, 2009, alleging violations of § 10(b) and Rule 10b-5 against all defendants, and violations of § 20(a) by Gui and Qiong.  HB&M and the CSP Defendants now move to dismiss the Amended Complaint pursuant to Rule 12(b)(6).

## II.   **LEGAL STANDARD**

A.   MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl.

<u>Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u>  A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level."  <u>Twombly</u>, 550 U.S. at 555.  The task of the court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  <u>In re Initial Pub. Offering Sec. Litig.</u>, 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted).  The court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor.  <u>See</u> <u>Chambers v. Time Warner</u>, 282 F.3d 147, 152 (2d Cir. 2002).

B.   <u>SECTION 10(b) AND RULE 10b-5 PLEADING STANDARDS</u>

To adequately state a cause of action for securities fraud under § 10(b) of the Exchange Act and Rule 10b-5, a plaintiff must assert facts showing that "the defendant made a false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused plaintiff injury."  <u>Kalnit v. Eichler</u>, 264 F.3d 131, 138 (2d Cir. 2001).  In an action under § 10(b) and Rule 10b-5,

plaintiffs must allege a state of mind evidencing "'an intent to deceive, manipulate or defraud.'" <u>Ganino v. Citizens Utils. Co.</u>, 228 F.3d 154, 168 (2d Cir. 2000) (<u>quoting</u> <u>Ernst & Ernst v. Hochfelder</u>, 425 U.S. 185, 193 n.12 (1976)).

Securities fraud actions are also subject to the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737, as well as those of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)").  <u>See</u> <u>Kalnit</u>, 264 F.3d at 138; <u>see also</u> <u>Novak v. Kasaks</u>, 216 F.3d 300, 306 (2d Cir. 2000).

### 1. <u>False or Misleading Statement or Omission</u>

To satisfy the pleading standards of Rule 9(b), allegations of fraud must be pled with particularity. Specifically, the complaint must: (1) specify the statements that the plaintiff alleges were fraudulent, (2) identify the speaker, (3) indicate when and where the statements were made, and (4) explain why the statements were fraudulent.  <u>See</u> <u>Novak</u>, 216 F.3d at 306.  The PSLRA imposes similar heightened pleading standards when a plaintiff alleges a material misrepresentation or omission.  <u>See</u> <u>Rombach v. Chang</u>, 355 F.3d 164, 170 (2d Cir. 2004).

### 2. <u>Scienter</u>

Pursuant to the PSLRA, a plaintiff can allege sufficient facts to support a "strong inference" of state of mind by

alleging facts "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007). Motive and opportunity can be established by demonstrating that defendants benefitted "in a concrete and personal way" from the alleged fraud. Novak, 216 F.3d at 311. Sufficient evidence of recklessness exists if the factual allegations demonstrate that defendants (1) possessed knowledge of facts or access to information contradicting their public statements, or (2) "failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud." Id. at 308.

> To summarize:
>
> the required strong inference may arise where the complaint sufficiently alleges that the defendants: (1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor.

Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc., 531 F.3d 190, 194 (2d Cir. 2008) (internal quotation marks omitted).

In addition, "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." Tellabs,

<u>Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 323 (2007).
A strong inference of scienter "must be more than merely
plausible or reasonable -- it must be cogent and at least as
compelling as any opposing inference of nonfraudulent intent."
<u>Id.</u> at 314.

    3.  <u>Causation</u>

    Lastly, to adequately state a claim for securities fraud,
a plaintiff must plead both transaction causation and loss
causation.  See <u>ATSI Commc'ns</u>, 493 F.3d at 106.  Transaction
causation is similar to reliance and requires a showing that
"but for the claimed misrepresentations or omissions, the
plaintiff would not have entered into the detrimental
securities transaction." <u>Lentell v. Merrill Lynch & Co.</u>, 396
F.3d 161, 172 (2d Cir. 2005) (internal quotation marks
omitted).  Loss causation requires a link between the alleged
misconduct and the ultimate economic harm suffered by the
plaintiff, and a plaintiff must claim that "the loss be
foreseeable <u>and</u> that the loss be caused by the materialization
of the concealed risk." <u>Id.</u> at 173 (emphasis in original).

C.  <u>SECTION 20(A) LIABILITY</u>

    Liability for violations of § 20(a) is derivative of
liability for violations of § 10(b).  See <u>Securities & Exch.</u>
<u>Comm'n v. First Jersey Sec., Inc.</u>, 101 F.3d 1450, 1472 (2d
Cir. 1996).  Section 20(a) imposes liability upon "[e]very

person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder ... unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a).   To establish a prima facie case, a plaintiff must show "a primary violation by the controlled person and control of the primary violator by the targeted defendant and show that the controlling person was in some meaningful sense [a] culpable participant[] in the fraud perpetrated by [the] controlled person[]." <u>First Jersey</u>, 101 F.3d at 1472 (internal quotation marks omitted) (alterations in original).

## III.   <u>DISCUSSION</u>

A.   <u>CSP DEFENDANTS</u>

The CSP Defendants argue that Plaintiffs fail to plead (1) scienter, (2) transaction causation, and (3) loss causation.   For the reasons discussed below, the Court finds CSP Defendants' arguments unavailing.   Accordingly, CSP Defendants' motion to dismiss is denied.

### 1.   <u>False or Misleading Statements</u>

Plaintiffs allege, and the CSP Defendants admit, that CSP's Fiscal Year and 4th Quarter 2007 Form 10-KSB and 1st Quarter 2008 Form 10-Q included misreported financial data.

Plaintiffs also claim that disclosures in the SEC filings and related press releases over the course of the Class Period regarding internal controls were materially false and misleading. The internal control statements at issue include: (1) CSP is in the process of remediating these deficiencies through "improving supervision, education and training of [CSP's] accounting staff" (Amended Complaint ¶¶ 31, 35 & 46); (2) "the remedial steps that [CSP] take[s] will address the conditions identified by [Gui] as significant deficiencies in [its] disclosure controls" (Id.); (4) CSP "implemented internal controls to comply with [SOX]" (Id. ¶ 41); (5) that "beginning in late 2007, [CSP] implemented an internal control system which will help [it] to enhance ... operating efficiency and reduce business risks" (Id.); and other similar disclosures.

The Court finds that the statements regarding the progress of internal control improvements and the financial misstatements constitute sufficient bases for a Rule 10b-5 claim. Misreported financial information clearly amounts to a false statement of fact. See In re Atlas Air Worldwide Holdings, Inc. Sec. Litig., 324 F. Supp. 2d 474, 486-87 (S.D.N.Y. 2004). Specifically, Plaintiffs allege that statements regarding CSP's net loss, losses per share, and general and administrative expenses were each false and

misleading.   Plaintiffs allege that these statements were
fraudulent because the CSP Defendants knew or recklessly
disregarded that CSP's financial statements were not prepared
in accordance with GAAP or its own accounting policies.

As to the statements regarding internal controls,
Plaintiffs properly plead a false or misleading statement by
1) specifying the statements that Plaintiff alleges were
fraudulent, (2) identifying the speaker, (3) indicating when
and where the statements were made, and (4) explaining why the
statements were fraudulent.   See Rombach, 355 F.3d at 170.   In
the Amended Complaint, Plaintiffs identify in detail the
relevant statements made by CSP and the particular filings and
press releases that contained these statements.   Plaintiffs
allege that these statements were false or misleading because
"Defendants knew or recklessly disregarded that Defendants
lacked the capacity and commitment to remedy the significant
weakness in internal controls at CSP."   (Amended Complaint ¶
43.)

Plaintiffs put forth sufficient allegations to support a
claim that CSP was not engaged in the improvement efforts
described in its public statements.   These allegations include
G. Bennett's resignation email, in which he states, among
other comments telling of CSP's internal control improvements,
that CSP was "seemingly unwilling to be educated on what is

necessary to be a good member of [AMEX] or any other credible market." ( Id. ¶ 52.)  The Court may permissibly infer from the statements of G. Bennett, who was not only a CSP director but a member of the CSP audit committee, that CSP's internal control problems were much more serious than the picture conveyed by its filings and press releases.  Given that the Court is obliged to accept the well-pleaded assertions of fact in the complaint as true, see Iqbal, 129 S. Ct. at 1949, and to draw all reasonable inferences and resolve doubts in favor of the non-moving party, see Kaluczky v. City of White Plains, 57 F.3d 202, 206 (2d Cir. 1995), the Court concludes that Plaintiffs allege an actionable statement sufficient to meet the pleading requirements of Rule 9(b) and the PSLRA, and thus to survive CSP Defendants' motion to dismiss.

    2.  <u>Scienter</u>

The Court finds that the Amended Complaint alleges "facts giving rise to a strong inference that the defendant acted with the required state of mind" as to the alleged false statements made throughout the Class Period.  15 U.S.C. § 78u-4(b)(2).  Although Plaintiffs do not allege facts to establish that the CSP Defendants had motive and opportunity, they do allege facts that "constitut[e] strong circumstantial evidence of conscious misbehavior or recklessness."  ATSI Commc'ns, Inc., 493 F.3d at 99.

To prove scienter through conscious misbehavior or recklessness, a plaintiff must allege conduct which at a minimum, "is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." In re Carter-Wallace, Inc. Sec. Litig., 220 F.3d 36, 39 (2d Cir. 2000) (internal quotation marks omitted). Taking into account plausible opposing inferences, a court should find the complaint to sufficiently allege scienter where "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, 551 U.S. at 324.

Defendants argue that courts consistently reject allegations of scienter based on allegations of GAAP violations or restatement alone. See, e.g., ECA Local 134 IBEW Joint Pension Trust Fund of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 200 (2d Cir. 2009) ("[A]llegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim."(internal quotation marks omitted) (alteration in original)); In re Bristol-Myers Squibb Sec. Litig., 312 F. Supp. 2d 549, 565 (S.D.N.Y. 2004) ("A Restatement of financial results, or [a]llegations of a violation of GAAP provisions or SEC

regulations, without corresponding fraudulent intent, are not sufficient to state a securities fraud claim." (quotation marks omitted) (alteration in original)).

Here, however, Plaintiffs do not allege that CSP's significant GAAP violations, which necessitated a financial restatement, are by definition evidence of scienter. Plaintiffs point to the repeated disclosures of CSP's weak internal controls as evidence that the CSP Defendants were aware of the deficient controls, and that these flaws were likely influencing financial results. In doing so, Plaintiffs allege that (1) CSP had weak internal controls and (2) that the CSP Defendants were aware of the problems. Both these allegations support a strong inference of scienter. See In re Veeco Instruments, Inc. Sec. Litig., 235 F.R.D. 220, 232 (S.D.N.Y. 2006) ("[A] failure to maintain sufficient internal controls to avoid fraud is sufficiently indicative of scienter...."); Oxford Health Plans, Inc. Sec. Litig., 51 F. Supp. 2d 290, 294 (S.D.N.Y. 1990) (finding recklessness where plaintiffs allege "complete lack of internal controls").

Further, as Plaintiffs argue, although GAAP violations do not independently sustain an inference of scienter, they may contribute to that inference. See Rothman v. Gregor, 220 F.3d 81, 98 (2d Cir. 2000). In finding that the CSP Defendants' GAAP violations add to the inference of scienter, the Court

takes into account Plaintiffs' allegations that the accounting violations caused CSP's 2007 income to be overstated by 133% and earnings per share to be artificially inflated by 175%.

G. Bennett's resignation email further supports an inference of scienter. As discussed above, G. Bennett's email provides additional evidence that the CSP Defendants were aware of ongoing internal control deficiencies. Qiong's removal as CEO also contributes to a strong inference of scienter. See In re Scottish Re Group Sec. Litig., 524 F. Supp. 2d 370, 394 n.176 (S.D.N.Y. 2007) ("[A]lthough not sufficient in and of themselves, [resignations] add to the overall pleading of circumstantial evidence of fraud.").

Given the totality of Plaintiffs' allegations against the CSP Defendants, the Court finds "the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, 551 U.S. at 324.

        3.   Transaction and Loss Causation

        Plaintiffs properly plead transaction causation and loss causation. The Amended Complaint states that both Maa and W. Bennett purchased CSP common stock after CSP made alleged false statements and before the corrective disclosure. It further alleges that Plaintiffs "reli[ed] on Defendants' and HB&M's fraudulent and material statements, misrepresentations

and omissions" and "had Plaintiffs and other members of the Class known of the material adverse information not disclosed by Defendants, or been aware of the truth behind Defendants' and HB&M's material misstatements, they would not have purchased CSP common stock at artificially-inflated prices." (Amended Complaint ¶¶ 101-02.)  Therefore, Plaintiffs present sufficient factual allegations to support the claim that "but for the claimed misrepresentations or omissions, the plaintiff would have entered into the detrimental securities transaction." Lentell, 396 F.3d at 172 (internal quotation marks omitted).

CSP Defendants argue that even if the Court finds that Plaintiffs allege transaction causation, Plaintiffs fail to allege loss causation because they allege only that they purchased stock at artificially inflated prices.  Defendants further assert that because the CSP stock had been losing value gradually, Plaintiffs cannot attribute their loss to the alleged false and misleading stock prices. See 60223 Trust v. Goldman, Sachs & Co., 540 F. Supp. 2d 449, 459-61 (S.D.N.Y. 2007).  The Court disagrees.  Plaintiffs allege that when CSP issued its corrective disclosure on August 20, 2008, its share price fell from $2.33 per share to $1.89 a share.  The Court finds that this allegation is a sufficient showing of loss causation and economic damages to survive a motion to dismiss.

B.    HB&M

    HB&M argues that Plaintiffs (1) fail to state a claim; (2) fail to properly plead scienter; (3) fail to properly allege loss causation and damages; and (4) that the Amended Complaint should be dismissed for lack of particularity pursuant to the PSLRA and Rule 9(b).  The Court disagrees.

    1.    Plaintiffs Satisfies Rule 9(b) and PSLRA
           Particularity and States a Claim

    Plaintiffs allege that HB&M made false statements when it misrepresented in its audit opinion, dated March 31, 2008, that the audit was conducted in accordance with GAAS, based on its audits, that HB&M believed CSP's 2007 financial statements were in conformity GAAP.  Defendants argue that the Court should apply a Tenth Circuit decision, <u>Deephaven Private Placement Trading, Ltd v. Granton Thorton & Co.</u>, which requires that Plaintiffs allege why the "stated basis" is false or misleading or why the auditor did not have the opinion expressed.  454 F.3d 1168, 1176 (10th Cir. 2006). Defendants claim that Plaintiffs' allegations are insufficient to state a claim because Plaintiffs do not contradict the "stated basis" of HB&M's opinion, specifically that the audit was conducted in accordance with GAAS.  However, unlike in <u>Deephaven</u>, <u>see</u> 454 F.3d at 1176 n.8, Plaintiffs do allege specific GAAS violations made by HB&M in conducting the audit. (<u>See</u> Amended Complaint ¶¶ 80-86.)

-21-

HB&M argues that Plaintiffs claim rests not on a false or misleading statement, but on the assumption that other tests or strategies would have revealed the alleged fraud sooner than CSP disclosed it.  As such, HB&M characterizes the Plaintiffs' allegations as conclusory and speculative, not particular.  The Amended Complaint, however, (1) specifies the statements that the Plaintiffs allege were fraudulent, (2) identifies the speaker, (3) indicates when and where the statements were made, and (4) explains why the statements were fraudulent.  <u>See</u> <u>Novak</u>, 216 F.3d at 306.  Accordingly, considering both the alleged GAAP violations in CSP's financial statement as well as the alleged GAAS violations committed by HB&M while performing the audit, the Court concludes that Plaintiffs sufficiently allege a false or misleading statement attributable to HB&M.

 2. <u>Plaintiffs Properly Plead Scienter</u>

When pleading fraud against auditors, the standards for alleging scienter are especially stringent.  <u>See</u> <u>In re Scottish Re Group Sec. Litig.</u>, 524 F. Supp. 2d. 370, 385 (S.D.N.Y. 2007).  Plaintiffs may plead recklessness, but the recklessness must entail a mental state so culpable that it "approximate[s] an actual intent to aid in the fraud being perpetrated by the audited company." <u>Rothman</u>, 220 F.3d at 98

(internal quotation marks omitted).  In the context of fraud claims against an auditor, plaintiffs must allege that

> the accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts.

Scottish Re Group, 524 F. Supp. 2d at 398 (internal quotation marks omitted).  In other words, allegations of a recklessly performed audit will approximate intent.  See Securities & Exch. Comm'n v. KPMG LLP, 412 F. Supp. 2d 349, 378 (S.D.N.Y. 2006).

Plaintiffs allege that scienter may be inferred from HB&M's GAAS violations and disregard of "red flags", specifically the control deficiencies that CSP disclosed in its filings.  See In re IMAX Sec. Litig., 587 F. Supp. 2d 471, 483-84 (S.D.N.Y. 2008) (defining "red flags" as facts that "would place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors").  Plaintiffs allege that HB&M was reckless in not altering its audit procedure to reflect CSP's admission that as a Chinese company it was unfamiliar with U.S. GAAP standards.

Defendants argue that Plaintiffs' allegations of scienter do not suffice to establish an inference "at least as compelling as any inference of nonfraudulent intent."

Tellabs, 551 U.S. at 324.   In support, Defendants cite The Limited, Inc. v. McCrory Corp., in which the court held that plaintiff's allegations that the auditor should have done more to uncover a financial misstatement amounted to negligence, not recklessness.   See 683 F. Supp. 387, 394-95 (S.D.N.Y. 1988).   In The Limited, however, plaintiffs failed to allege "how or when [the auditor] became aware of facts that made the financial statements materially misleading."   Id. at 394.

The factual situation presented here is distinguishable from The Limited and the other cases cited by HB&M. Plaintiffs allege more than negligence; Plaintiffs allege that HB&M was aware, through CSP's own disclosures, that CSP had serious internal control problems, especially as a company unfamiliar with U.S. GAAP standards.   Plaintiffs do not merely allege that HB&M should have discovered errors in CSP's financial reporting, but that they were aware, based on CSP's filings, that there were ongoing serious problems with CSP's financial reporting.

Given the allegations that HB&M committed GAAS and GAAP violations and disregarded red flags, the Court concludes that Plaintiffs' allegations raise a strong inference of scienter as to HB&M.   See In re Winstar Commc'ns, No. 01 cv 3014, 2006 WL 473885, at *11 (S.D.N.Y. Feb. 27, 2006) ("An auditor's reckless disregard of red flags, coupled with allegations of

GAAP and GAAS violations, is sufficient to support a strong inference of scienter."); Whalen v. Hibernia Foods PLC, No. 04 Civ. 3182, 2005 WL 1799370, at *3 (S.D.N.Y. Aug. 1, 2005) (holding allegations auditor "knew about and ignored a wide variety of 'red flag' incidents or events, that should have put [auditor] on notice that fraud was afoot, ... taken together ... are sufficient for the Court to find a strong inference of recklessness.").

    3.   <u>Plaintiffs Properly Allege Loss Causation and Damages</u>

HB&M argues that because Plaintiffs fail to allege "what part of the class was holding shares (or how many purchased them), prior to, during or after the purported inflation" and "how many are still holding their shares," Plaintiffs should be precluded from recovering damages. As Plaintiffs correctly point out, damages issues are not properly resolved at the motion to dismiss stage.

Further, that Class members have not yet sold their shares does not preclude a finding of loss causation or an award of damages. HB&M cites two inapposite cases to support their contention. First, HB&M points to <u>Estee Lauder Companies Securities Litigation</u>, in which the court held that plaintiffs failed to allege loss causation where the share price, though dropping immediately following the disclosure, recovered to approximately the purchase price at the start of

the class period.  See No. 06 Civ. 2505, 2007 WL 1522620, at
*1 (S.D.N.Y. May 21, 2007).  The court found that plaintiff
did not allege that he suffered any loss but merely that he
purchased the stock at an inflated price.  Here, Plaintiffs
allege a loss and connect that loss to CSP's disclosure, thus
"provid[ing] the defendants with notice of what the relevant
economic loss might be or of what the causal connection might
be between that loss and the misrepresentation...."  Dura
Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005).

        Second, HB&M cites the discussion of damages in In re
Veeco Instruments Inc. Securities Litigation, in which the
court approved a settlement agreement for a securities class
action.  See No. 05 MDL 01695, 2007 WL 4115809, at *10
(S.D.N.Y Nov. 7, 2007).  The decision, rather than supporting
HB&M, supports Plaintiffs' position that the question is not
one to be determined at the motion to dismiss stage.  Contrary
to HB&M's position, neither Estee Lauder nor Veeco contradicts
the "decades of precedent both before and after the enactment
of the PLSRA" that plaintiffs holding shares at the time of
suit "have not been precluded from maintaining securities
fraud actions."  In re Royal Dutch/Shell Transp. Sec. Litig.,
404 F. Supp. 2d 605, 611 (D.N.J. 2005).

        As discussed above, Plaintiffs allege that when CSP
issued its corrective disclosure on August 20, 2008, its share

price fell from \$2.33 per share to \$1.89 a share.  The Court
finds that this allegation is sufficient showing of loss
causation and economic damages to survive a motion to dismiss.

     C.   SECTION 20(a) CLAIMS

To state a control person claim, a plaintiff must allege
(1) a primary violation by a controlled person; (2) control of
the primary violator by the defendant; and (3) that the
controlling person was a culpable participant in the fraud.
See First Jersey, 101 F. 3d at 1472.  Control may be pleaded
in accordance with the pleading standard prescribed in Federal
Rule of Civil Procedure Rule 8(a) ("Rule 8(a)").  Plaintiffs
must plead "sufficient factual matter, accepted as true, to
'state a claim to relief that is plausible on its face,'"
Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570),
but need not satisfy the heightened pleading standards of Rule
9(b).  See Hall v. The Children's Place Retail Stores, Inc.,
580 F. Supp. 2d 212, 234-35 (S.D.N.Y. 2008).

Gui, LIMI, and Qiong move to dismiss the § 20(a) control
person claim on the grounds that Plaintiffs have not alleged
a primary violation of § 10(b).  To the extent that Plaintiffs
sufficiently allege a predicate violation of § 10(b), they
satisfy the first element of a control person claim under §
20(a).  See Rombach, 355 F.3d at 177-78; First Jersey, 101 F.
3d at 1472; Elliott Assocs., L.P. v. Hayes, 141 F. Supp. 2d

344, 360-61 (S.D.N.Y. 2000).  Therefore, because Plaintiffs have alleged a primary violation based on statements contained in CSP's filings and press releases throughout the Class Period, Plaintiffs adequately allege the first element of the claim.

Further, the Amended Complaint meets the standards of "plausibility" in pleading that the Gui, LIMI, and Qiong had control and were culpable participants in the alleged fraud. Plaintiffs allege that Gui, LIMI, and Qiong "acted as controlling persons ... [b]y virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public," as well as their "direct and supervisory involvement in the day-to-day operation of the Company." (Amended Complaint ¶¶ 120, 122.)  Plaintiffs also allege that Gui, LIMI, and Qiong had the power to "influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading." (Id. ¶ 120.)  As to LIMI specifically, Plaintiffs, quoting CSP's SEC filings, allege that "LIMI has controlling influence in determining the

outcome of any corporate transaction or other matters submitted to [CSP's] stockholders for approval.... Limi also has the power to prevent or cause a change in control at [CSP]." (Id. ¶ 121.) Accordingly, the Amended Complaint states a claim for control person liability as to each of the alleged control persons.

## IV. ORDER

For the reasons discussed above, it is hereby

ORDERED that the motion (Docket No. 44) of defendants China Shenghuo Pharmaceutical Holdings, Inc.; Lan's International Medicine Investment Co., Limited; Gui Hua Lan; and Qiong Hua Gao, to dismiss the amended complaint is DENIED; and it is further

ORDERED that the motion (Docket No. 35) of defendants Hansen, Barnett & Maxwell, P.C., to dismiss the amended complaint is DENIED; and it is finally

ORDERED that the parties are directed to confer and develop a proposed Case Management Plan to be submitted to the Court at the initial conference on this case, which shall be held on January 15, 2010, at 9:30 a.m.

SO ORDERED.

Dated:   New York, New York
         9 December 2009

VICTOR MARRERO
U.S.D.J.

USDS SDN
DOCUMEN
ELECTRO......... FILED
DOC #:
DATE FILED: 12-9-09

-29-